

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THERESA ANTHONY,

        Defendant.

Case No. 16-CR-34

---

## PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Gregory J. Haanstad, United States Attorney for the Eastern District of Wisconsin, and Jonathan H. Koenig, Assistant United States Attorney, and the defendant, Theresa Anthony, individually and by attorney Susan Karaskiewicz, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a one-count indictment, which alleges a violation of Title 42, United States Code, Section 408(a)(5).

3. The defendant has read and fully understands the charge contained in the indictment. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

*THE GRAND JURY CHARGES THAT:*

*1. On or about March 18, 2011, in the State and Eastern District of Wisconsin,*

***THERESA ANTHONY,***

*having made application to receive Supplemental Security Income ("SSI") payments for the use and benefit of others, and having received such payments, knowingly and willfully converted such payments to a use other than for the use and benefit of those persons.*

*2. SSI benefits are payable under Title XVI of the Social Security Act for aged, blind, and disabled persons with little or no income or resources. A "representative payee" is an individual or organization appointed by the Social Security Administration to receive and manage the SSI benefits of another person.*

*3. The defendant acted through an entity known as City Transformation, Ltd., which successfully applied to serve as representative payee to receive and manage SSI benefit payments on behalf of numerous beneficiaries in Milwaukee, Wisconsin. The defendant, in her role as Executive Director of City Transformation, Ltd., was able to convert SSI payments received by City Transformation, Ltd. and intended for the use and benefit of others to her own use and that of City Transformation, Ltd.*

*4. Specifically, on or about March 18, 2011, the defendant diverted SSI payments from a collective representative payee account maintained by City Transformation, Ltd. to a general business account maintained by City Transformation, Ltd., and then withdrew approximately $22,364.93 from that general account so that City Transformation, Ltd. could purchase from the defendant real property located at 26XX N. 50th Street in Milwaukee, Wisconsin.*

*All in violation of Title 42, United States Code, Section 408(a)(5) and Title 18, United States Code, Section 2.*

5.  The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

SSI benefits are payable under Title XVI of the Social Security Act for aged, blind, and disabled persons with little or no income or resources. A "representative payee" or "rep payee" is an individual or organization appointed by the Social Security Administration to receive and manage the SSI benefits of another person.

Theresa Anthony was the Executive Director of City Transformation, Ltd. ("CT"), which she incorporated as a non-stock corporation in 2006. In addition to providing rep-payee services, such as bill-paying, for those unable to manage their own affairs, CT also offered various social services such as drug and alcohol rehabilitation and assistance with food and housing.

Even before CT was formally incorporated, Anthony applied for CT to become an organizational representative payee. At that time, in early 2006, Anthony met with a Social Security Administration ("SSA") Operations Supervisor concerning reporting requirements and other obligations of an organizational representative patee She was provided a copy of a representative payee guide that made clear, among other things, that SSI funds were not to be used for anything other than the beneficiary's use or benefit.

In mid-2007, CT obtained permission to charge a fee for service as to each beneficiary under CT's care.

By February of 2011, CT was serving about 180 beneficiaries. By this time, therefore, Anthony had signed up many beneficiaries for CT's rep payee services. Each time, she had to acknowledge, that "I/my organization…must use all payments made to me/my organization as the representative payee for the claimant's current needs or (if not currently needed) save them for his/her future needs."

There was also an SSA audit of CT in 2009, during which the importance of having better accounting procedures was made clear to Ms. Anthony. The message was conveyed that CT needed better controls so that the SSA could ensure that SSI payments were used for the use and benefit of the intended beneficiaries.

Theresa Anthony and Gary Taylor (President of CT) were the only two with signature authority on CT's bank accounts at Landmark Credit Union. CT had individual accounts at Landmark for each SSI beneficiary under its care. The SSA would electronically deposit funds into those accounts every month. From there, the funds would be transferred by CT to a "collective" representative payee account (account number 7).

3

The creation of a collective account in which funds are co-mingled is not in itself improper, but can complicate book-keeping to determine whether funds are being spent on beneficiaries' needs.

CT would transfer funds from the collective account to its general business account (account number 9), from which it would pay all manner of expenses, including overhead expenses, salary, and the like. Technically the only benefit-payment monies that ought to have made their way into CT's general account were the fees it could legitimately charge a beneficiary for its rep-payee services (typically $32/month though sometimes more).

One particular set of transfers during March of 2011 gives rise to the charge set forth in the indictment. As of March 18, 2011, the "collective" representative payee account (account number 7) had a balance of approximately $34,000. This amount represented, in whole or in part, funds that had been transferred over from the individual representative payee accounts. On the first or second day of each month, beneficiaries received their SSI payments (often $674) electronically and these funds were then transferred into the collective account from the individual accounts. Thus, on March 1, 2011, for example, a total of roughly $65,000 was transferred into the collective account from the individual accounts. By March 18, 2011, as noted, the balance was about $34,000.

On March 18, 2011, Theresa Anthony wrote and endorsed a series of 48 checks on the collective account in the amounts of $500 or $450 (always exactly these amounts; never with anything in the memo line) and at around 10:30 AM deposited all of them into CT's general account (number 9). The grand total of these deposits was $23,400. Prior to this deposit, the balance in the general account was just $1,838.43.

Around 2:15 PM on the 18th, Anthony withdrew $22,364.93 from the replenished general account in the form of a cashier's check. The transaction record for this withdrawal includes her signature and reflects that she showed her driver's license. The cashier's check funded the purchase – by CT – of real estate owned by Anthony at 26XX N.50th Street in Milwaukee. Documentation provided by the settlement agent for the transaction shows that Theresa Anthony was the seller and CT the buyer of this real estate. It appears that Theresa Anthony and Gary Taylor both attended the closing on the afternoon of the 18th.

The March 18th transactions were part of an ongoing course of conduct by Anthony involving the misuse of SSI funds, defined broadly as any use of those funds for a purpose other than the benefit of the beneficiaries. The SSA has catalogued a variety of ways in which SSI funds were misused between 2008 and 2012. These included, but were not limited to, unverified expenditures, failure to return unused funds to SSA ("conserved funds"), charging of unauthorized fees, excessive tax-preparation fees charged to beneficiaries, undocumented "clinical co-pays" for rehab services offered, and duplicate rent payments (CT was often both landlord for beneficiaries and rep payee).

SSA calculates a total "misuse" amount of $251,559.30. This amount includes the approximately $22,000 used on March 18, 2011 to fund the purchase of the property on N. 50th

Street. SSA has made the SSI beneficiaries whole for these amounts and thus stands in their shoes for purposes of restitution, as provided for more specifically below.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: five years and $250,000. The count also carries a mandatory special assessment of $100, and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge as set forth in the indictment, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant knowingly and willfully converted to an unauthorized use;
> Second, an SSI benefit payment, or any part of a benefit payment;
> Third, accepted on behalf of another

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

5

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

12. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

13. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

14.     The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 6 under Sentencing Guidelines Manual § 2B1.1 (a) (2) and that a 12-level increase is applicable under Sentencing Guidelines Manual § 2B1.1 (b) (1) (G) based on a loss from the charged offense, and all relevant conduct, of more than $250,000.

### Specific Offense Characteristics

15.     The parties acknowledge and understand that the government will recommend to the sentencing court that a two-level adjustment is applicable under Sentencing Guidelines Manual § 3B1.3, as the defendant held a position of private trust that facilitated her ability to commit and conceal the criminal conduct.

16.     The parties acknowledge and understand that the government will recommend to the sentencing court that a two-level adjustment is applicable under Sentencing Guidelines Manual § 2B1.1(b)(2)(A)(i), as the offense involved more than ten victims.

### Role in the Offense

17.     Pursuant to Sentencing Guidelines Manual §§ 3B1.1/ 3B1.2, the parties agree to recommend to the sentencing court that no adjustment be given for an aggravating or mitigating role in the offense.

### Acceptance of Responsibility

18.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-

level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence of imprisonment of no more than 16 months, to be followed by three years' supervised release.

### Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

26. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100.00 prior to or at the time of sentencing.

### Restitution

28. The defendant, pursuant to Title 18, United States Code, Section 3633(a)(3), in order to make the Social Security Administration whole for the entire course of conduct outlined in Paragraph 5, agrees to pay restitution in the amount of **$251,559.30** to:

9

Social Security Administration
Debt Management Section
Attn: Court Refund
PO Box 2861
Philadelphia, PA 19122

29.     The parties agree to advise the sentencing court that as of the date of this agreement, the defendant has paid restitution in the amount of $_____.

## **DEFENDANT'S WAIVER OF RIGHTS**

30.     In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

- a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

- c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

- d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

10

e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

31. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

34. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal

11

or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

### Further Civil or Administrative Action

35. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed.

The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

### VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/5/16

THERESA ANTHONY
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5/5/16

SUSAN KARASKIEWICZ
Attorney for Defendant

For the United States of America:

Date: 5/5/16

GREGORY J. HAANSTAD
United States Attorney

Date: 5/5/16

JONATHAN H. KOENIG
Assistant United States Attorney

14